## BOBBY GLENN *vs.* PAUL R. AIKEN.

Suffolk. December 4, 1990. - April 8, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Attorney at Law*, Malpractice, Negligence. *Negligence*, Attorney at law, Burden of proof. *Practice, Civil*, Summary judgment, Complaint, Burden of proof. *Estoppel. Judge.*

On a malpractice claim against an attorney, by a former client alleging that the defendant's negligent failure to preserve for appeal an issue involving the judge's error in his charge to the jury in a criminal case had resulted in the plaintiff's serving fourteen months' incarceration, allowance of summary judgment in the defendant attorney's favor was not justified on the grounds that, because the Appeals Court (23 Mass. App. Ct. 440 [1987]) did not reverse the plaintiff's conviction by reason of ineffective assistance of counsel, an issue the plaintiff's appellate counsel did raise, the plaintiff was precluded from recovery [701-702], or that the plaintiff's complaint did not allege that he was innocent of the criminal charge. [702-703]

On a malpractice claim against an attorney, by a former client alleging that the attorney's negligent failure to preserve for appeal an issue involving the judge's error in the charge to the jury in a criminal case had resulted in the plaintiff's serving fourteen months' incarceration, an affidavit of the trial judge in the criminal case stating that, if an objection had been made to the error in his charge, he would have overruled it, did not warrant entry of summary judgment for the defendant attorney. [703-704]

This court concluded that, at the trial of a civil action, the plaintiff (a criminal defendant seeking to recover against his former trial counsel for malpractice that he claimed resulted in his incarceration) would be required to prove by a preponderance of the evidence, not only that the negligence of the attorney defendant caused him harm, but also that the plaintiff did not commit the crime charged. [704-708] LIACOS, C.J., concurring.

CIVIL ACTION commenced in the Superior Court Department on October 20, 1988.

The case was heard by *Elbert Tuttle*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Stephen Hrones* for the plaintiff.

*Erik Lund* (*Cynthia C. Smith* with him) for the defendant.

WILKINS, J. The Appeals Court reversed the plaintiff Glenn's conviction of arson because of an error in the judge's charge. Glenn's trial counsel, the defendant in this case, had not properly preserved that issue for appellate review. *Commonwealth* v. *Glenn*, 23 Mass. App. Ct. 440 (1987). The court reversed the conviction because the error in the judge's charge created a substantial risk of a miscarriage of justice. *Id.* The Commonwealth elected not to retry Glenn, who had already served fourteen months of his sentence. In this action, Glenn seeks to recover against his former trial counsel for malpractice that he claims cost him fourteen months of freedom.

A judge of the Superior Court allowed the defendant attorney's motion for summary judgment on the ground that, on the summary judgment record, it was uncontested that the defendant attorney's negligence, if any, did not cause Glenn his loss of freedom. The motion judge concluded that there was no dispute of material fact on the causation issue because the trial judge in *Commonwealth* v. *Glenn*, stated in an affidavit that, if an objection had been made to the error in his charge, he would have overruled it. The trial judge said that he read the charge from what he said was a reliable source of jury instructions, the Superior Court charge book, which cited *Commonwealth* v. *MacKenzie*, 376 Mass. 148, 150 (1978), as supporting the faulty language in the charge.[1] If, on this record, the judge's uncontroverted opinion as to

---

[1]The problem with the charge was that it permitted the jury to convict the defendant without proof that he wilfully and maliciously set the fire and only with proof of negligence or accident. The precise words were: "A person may be found, however, to possess criminal intent for arson if he or

what he would have done if the defendant attorney had objected to the error in the charge is conclusive on the causation issue, the defendant attorney's alleged negligence would not have been the cause of Glenn's imprisonment, and summary judgment for the defendant attorney was properly entered. See *Leavitt* v. *Mizner*, 404 Mass. 81, 88 (1989) (summary judgment record showed that any negligence of criminal defense counsel did not harm former client plaintiff). We allowed the defendant attorney's application for direct appellate review.

Before we consider the basis for the motion judge's decision, we shall dispose of two issues that the defendant attorney asserts, in any event, justify the motion judge's allowance of summary judgment in his favor. He argues that, because the Appeals Court did not reverse Glenn's conviction on the ground of ineffective assistance of counsel, an issue Glenn's appellate counsel did raise, Glenn may not recover in this action. He cites in support only the trial court opinion in *Weaver* v. *Carson*, 62 Ohio App. 2d 99 (1979). Although the Appeals Court did not rule directly on the question of ineffectiveness of counsel, it may have done so implicitly when it observed that "[t]he failure to object to the instruction cannot reasonably be attributed to tactical considerations." *Commonwealth* v. *Glenn, supra* at 445 & n.1. The best that can be said for the defendant attorney on this issue is that the Appeals Court did not rule explicitly that he was ineffective in a constitutional sense. In any event, we see no logic in making a judicial ruling of attorney ineffectiveness in the constitutional sense a condition precedent to the liability of an allegedly negligent criminal defense attorney. Although an appellate court's ruling that counsel was not ineffective may well justify precluding a criminal defendant from main-

---

she negligently or accidentally causes a fire and then makes no attempt to report it. The necessary criminal state of mind for arson may be in some cases unformed [*sic*] after the fire is started."

*Commonwealth* v. *MacKenzie, supra*, does not support the instruction. It makes no reference to negligence or accident.

taining a malpractice action against his trial counsel,[2] if an appellate court did not reach the issue because it reversed the conviction on another ground, a former criminal defendant is not collaterally estopped or precluded from presenting the issue of his defense attorney's negligence.

The attorney defendant next argues that, because Glenn's complaint did not allege that he was innocent of the arson charge, his action was properly dismissed. Courts have generally required that a former criminal defendant prove his innocence of the crime charged as an element of his claim that his former trial counsel was negligent in defending him. See, e.g., *Weiner* v. *Mitchell, Silberberg & Knupp*, 114 Cal. App. 3d 39, 48 (1980) (guilt alone was proximate cause of all damages resulting from defendant's indictment); *Sullivan* v. *Wiener*, No. 88 C 6813 (N.D. Ill. June 5, 1989) (Illinois law); *State ex rel. O'Blennis* v. *Adolf*, 691 S.W.2d 498, 503 (Mo. Ct. App. 1985) (defendant's "factual innocence" indispensable element of his cause of action); *Carmel* v. *Lunney*, 70 N.Y.2d 169, 173 (1987) (plaintiff must allege innocence or colorable claim of innocence; guilty plea bars claim); *B.K. Indus., Inc.* v. *Pinks*, 143 A.D.2d 963, 964-965 (N.Y. 1988) (plaintiff has burden of proving innocence of criminal charges). Cf. *Schlumm* v. *O'Hagan*, 173 Mich. App. 345, 359 (1988) (if alleged malpractice is in sentencing representation, need not prove innocence). These cases treat a defendant attorney's negligence as not the cause of the former

---

[2]See, e.g., *Schlumm* v. *O'Hagan*, 173 Mich. App. 345, 355-356 (1988) (defense attorney may defensively assert collateral estoppel based on prior judicial rejection of claim of ineffective assistance of counsel); *Johnson* v. *Raban*, 702 S.W.2d 134, 137-138 (Mo. Ct. App. 1985) (prior determination that counsel was not ineffective collaterally estops former criminal defendant from maintaining malpractice action against counsel because standard for measuring counsel's performance is same in each proceeding); *Alberici* v. *Tinari*, 542 A.2d 127, 131-132 (Pa. Super. Ct. 1988) (same).

Such a plaintiff former client may properly be precluded from relitigating the issue of defense counsel's negligence only if the standard used for measuring the ineffectiveness of counsel in a constitutional sense (see *Commonwealth* v. *Callahan*, 401 Mass. 627, 635 [1988]) holds counsel to at least as high a duty of care as that applicable in a malpractice action against an attorney (*Fishman* v. *Brooks*, 396 Mass. 643, 646 [1986]).

client's injury as a matter of law, unless the plaintiff former
client proves that he did not commit the crime. Even if, as
we shall conclude, Glenn has the burden in this case to prove
his innocence, under notice pleading he had no obligation to
allege his innocence in his complaint.[3] See *Nader v. Citron,*
372 Mass. 96, 98 (1977).

The affidavit of the trial judge in *Commonwealth v. Glenn*
does not support the grant of summary judgment in favor of
the defendant attorney. The issue of what might have hap-
pened if the defendant attorney had objected promptly to the
error in the judge's charge must be decided on an objective
basis. The after-the-fact conclusion of the trial judge that he
would not have changed his position is irrelevant.[4]

We disfavor calling a judge as a witness to opine on what
ruling he might have made on a particular hypothesis. The
fact that this particular judge signed an affidavit should not
distract us from noting the inappropriateness of turning to
such extra-record, subjective views and of summoning judges
to testify on such matters. Probing the mental processes of a
trial judge, that are not apparent on the record of the trial

---

[3]The defendant attorney has not eliminated as a material fact on the
summary judgment record the question of Glenn's guilt or innocence. Be-
cause the issue may arise in a significant form in subsequent proceedings,
we shall discuss later why Glenn must prove his innocence in order to pre-
vail in this case.

The plaintiff's claim that it was error not to grant his motion for sum-
mary judgment lacks merit. The defendant attorney is not bound by rul-
ings in the Appeals Court case. The summary judgment record does not
show that there is no issue of material fact on the plaintiff's claim.

[4]Even if we were to accept the judge's statement as relevant, we would
not view it as dispositive of the causation issue. If the defendant attorney
had caught the error and had objected, at least by the time shortly after
trial when a motion for new trial could have been presented, the judge
could have realized that he had permitted the jury to convict the defendant
of arson on the basis of negligence or accident. He could have also discov-
ered that the authority cited for the language appearing in the Superior
Court charge book was totally nonsupportive. We wonder whether, in such
situations, the trial judge would not have even stayed execution of Glenn's
sentence pending appeal. In any event, if an objection had been made and
defense counsel had pursued the matter of a stay, an appellate judge might
have granted a stay pending appeal.

proceeding, is not permissible. See *Day* v. *Crowley*, 341
Mass. 666, 669-670 (1961); *Washington* v. *Strickland*, 693
F.2d 1243, 1263 (5th Cir. 1982), rev'd on other grounds, 466
U.S. 668 (1984); *Fayerweather* v. *Ritch*, 195 U.S. 276, 307
(1904) (record "ought never to be overthrown or limited by
the oral testimony of a judge or juror of what he had in mind
at the time of the decision"); *United States* v. *Crouch*, 566
F.2d 1311, 1316 (5th Cir. 1978); *Morrison* v. *Kimmelman*,
650 F. Supp. 801, 806-807 (D.N.J. 1986).[5] The trial judge's
affidavit did not warrant entry of summary judgment for the
defendant attorney.

Finally, we discuss the relevance in future proceedings in
this case of Glenn's guilt or innocence of the arson charge.
We conclude that Glenn will have the burden of proving that
he was innocent of the arson charged in the underlying crim-
inal proceeding.

Those courts that require a former criminal defendant to
prove his innocence of the charge against which the defend-
ant attorney defended him (see cases cited above at page
702) explicitly or implicitly reject two principles that are
generally applicable to a claim that defense counsel was neg-
ligent in the defense of a *civil* action.

First, a requirement that a plaintiff, the former criminal
defendant, must prove his innocence of the crime with which
he was charged may relieve the defendant attorney, his for-
mer counsel, of liability for harm that the plaintiff suffered
only because of his defense counsel's negligence. For exam-
ple, if a defendant attorney failed to assert a clearly valid
defense of the statute of limitations, a client who did commit

---

[5] In explaining the policy reasons for the rule that a judge's mental
processes in reaching a decision may not be probed, the Fifth Circuit said
in *Washington* v. *Strickland, supra* at 1263: "First, such testimony poses
special risks of inaccuracy. The testimony is often given several years after
the fact and a judge is unlikely to be able to reconstruct his thought
processes accurately over such a span of time. Second, the finality and
integrity of judgments would be threatened by a rule that enabled parties
to attack a judgment by probing the mental processes of a judge. Similar
considerations underlie the rule against probing the mental processes of
jurors."

the crime, but should not have been convicted of it, sustained a real loss, but he may not recover against the attorney defendant. Should it be a principle of public policy that a blatantly negligent defense counsel should be free from civil liability for his error that prevented his client from walking free? A failure of a defendant's counsel in a civil case to plead an obviously winning affirmative defense would be a proper basis for a malpractice claim, even if the civil defendant would otherwise have been liable.

This distinction between guilt in fact and legal guilt can be presented in a variety of situations. A negligent failure to move to suppress evidence seized in clear violation of the defendant's constitutional or statutory rights could lead to a conviction that would have been totally forestalled by the allowance of a motion to suppress. Such a former criminal defendant might well not be able to prove his innocence of such a crime and, under the cases that make proof of his innocence an element of his case against his former attorney, the attorney would be free from liability.

It may be difficult to defend logically a rule that requires proof of innocence as a condition of recovery, especially if a clear act of negligence of defense counsel was obviously the cause of the defendant's conviction of a crime.[6] We need not decide the point because the case before us does not involve clear negligence whose causal connection to the conviction is clear. A properly instructed jury could have found the defendant guilty, as the Appeals Court noted in its opinion. *Commonwealth* v. *Glenn*, 23 Mass. App. Ct. at 444. In such a case, the guilt or innocence of the plaintiff former client is an appropriate issue for consideration. That then raises questions of the proof that must be shown and brings us to the second departure that the rule that the former criminal de-

---

[6]See O.M. Kaus & R.E. Mallen, The Misguiding Hand of Counsel - Reflections on "Criminal Malpractice," 21 UCLA L. Rev. 1191, 1205 (1974) (requiring proof of innocence "just about destroys criminal malpractice as an actionable tort in the very type of situation where the lawyer's incompetence is most flagrant and its consequences most easily demonstrable").

fendant must prove his innocence takes from the principles applicable to a claim that counsel for a civil defendant was negligent.

In a malpractice action claiming that counsel for the defendant in a civil case was negligent, the defendant attorney can prevail by proving by a preponderance of the evidence that, even though he may have been negligent, the plaintiff, his former client, would have lost the underlying case anyway. See *Glidden* v. *Terranova*, 12 Mass. App. Ct. 597, 600 (1981), approved on this point in *Deerfield Plastics Co.* v. *Hartford Ins. Co.*, 404 Mass. 484, 486 n.3 (1989). In other words, in such a "trial within a trial," the defendant attorney seeks to prove that the plaintiff in the underlying action would have prevailed even if the defendant attorney had not been negligent. The factual issues once involved in the underlying action are presented to the trier of fact in the malpractice case with the burden of proof placed precisely as it was in the underlying action itself, counsel for the defendant attorney presenting the case formerly presented by the plaintiff in the underlying action. Cf. *Jernigan* v. *Giard*, 398 Mass. 721, 723 (1986) (if defendant attorney acted for plaintiff in underlying action, former client must prove that better result would have been obtained absent attorney's negligence). If, for the case before us, we were to adhere to the analogy to a trial within the trial in a civil action, we would place the burden of proof as it was placed in the criminal case, and the defendant attorney would have to prove that his former client was guilty beyond a reasonable doubt.

No court to our knowledge has gone in this direction. The analogy to the trial of a civil malpractice action fails as a guide. Not only is there the problem of differing burdens of proof, but public policy considerations also differ. The evidence that may be admitted in the civil malpractice action will not be governed by rules applicable in a criminal trial. The defendant attorney, for example, will be entitled to testify to relevant statements by his former client unrestrained by the attorney-client privilege. See *Commonwealth* v. *Brito*, 390 Mass. 112, 119 (1983); S.J.C. Rule 3:07, DR 4-101 (C)

(4), as appearing in 382 Mass. 778 (1981). Without much discussion, courts have reached the conclusion that a person who has committed a crime should not be entitled to recover from his former defense counsel for the consequences of counsel's negligence.[7]

There is good reason to place a greater burden on a guilty criminal defendant maintaining a claim of malpractice of the type involved in this case than is placed on a wronged civil defendant. The underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime. The possibility that a criminal defendant may not be guilty provides a sufficient, general deterrent against negligent conduct of defense counsel, without the need for providing a tort remedy for guilty former criminal defendants. Thus, in order to justify a right to recover, a plaintiff asserting an error of the type Glenn asserts in this case must prove by a preponderance of the evidence, not only that the negligence of the attorney defendant caused him harm, but also that he is innocent of the crime charged.

There is a further policy reason for the rule we adopt. Most criminal defendants in this Commonwealth are represented by counsel appointed at public expense or private

---

[7] In *Carmel* v. *Lunney*, 70 N.Y.2d 169 (1987), the Court of Appeals did explain in general terms why a former criminal defendant who cannot prove his innocence may not, as a matter of public policy, maintain a malpractice action against his former attorney. "This is so because criminal prosecutions involve constitutional and procedural safeguards designed to maintain the integrity of the judicial system and to protect criminal defendants from overreaching governmental actions. These aspects of criminal proceedings make criminal malpractice cases unique, and policy considerations require different pleading and substantive rules." *Id.* at 173-174.

The question of the relevance of guilt is thoughtfully discussed at pp. 1200-1206 of the article by Kaus and Mallen cited in note 6 above.

counsel whose fees are not substantial. The public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent. The rule we favor helps to encourage that kind of legal representation by reducing the risk that malpractice claims will be asserted and, if asserted, will be successful. We do not go so far, however, as to state that a criminal defense attorney can never be liable civilly for his negligence in the defense of a criminal case.[8]

Because summary judgment for the defendant should not have been entered, the judgment is reversed, and the case is remanded for further proceedings.

*So ordered.*

LIACOS, C.J. (concurring). I agree with the court that the defendant's motion for summary judgment should not have been granted. I write separately because I disagree with the court's statement that the plaintiff, formerly a criminal defendant, should have to prove that he was innocent of the crime with which he was charged in the underlying criminal proceeding.

A tort plaintiff seeking damages for legal malpractice must establish that: (1) the attorney had a duty toward the plaintiff; (2) the attorney breached the duty by failing to ex-

---

[8]The concurrence takes the unprecedented position that Glenn need prove by a preponderance of the evidence that, if the defendant attorney had not been negligent, "the result of the criminal trial would have been different." This position implicitly limits the evidence bearing on causation in the civil malpractice trial to the evidence admitted at the criminal trial and perhaps even to the very questions asked and answers given. This position is impractical and unfair to the defendant attorney. Moreover, the concurrence's position means that Glenn would have to prove by a preponderance of the evidence that the jury would not have found him guilty beyond a reasonable doubt. This confusing mixture of burdens of proof probably means that Glenn would have to prove that, on all the evidence admitted at his trial, no reasonable jury would have found him guilty beyond a reasonable doubt. We doubt his dedication to replicating the Commonwealth's case against him with appropriate prosecutorial fervor.

ercise the proper degree of care; (3) the breach proximately caused the plaintiff's injuries. See *Fishman* v. *Brooks*, 396 Mass. 643, 646-647 (1986); Barry, Legal Malpractice in Massachusetts, 63 Mass. L. Rev. 15 (1978). The court concludes that, in order for a plaintiff in a malpractice action to establish proximate cause (where the alleged negligence was not "obviously the cause of the defendant's conviction," *ante* at 705), he "must prove by a preponderance of the evidence, not only that the negligence of the attorney defendant caused him harm, but also that he is innocent of the crime charged." *Ante* at 707.

A criminal trial is an adjudication of a defendant's legal guilt. As a result, a jury's verdict does not address necessarily the issue of a defendant's actual guilt. Two examples suffice to make the point. A defendant who committed the crime may be acquitted if the jury, based on the evidence introduced by the prosecution, had a reasonable doubt as to the defendant's legal guilt. Or, alternatively, a defendant may be acquitted because evidence of guilt is suppressed due to it being tainted by some constitutional violation by law enforcement personnel. Since a criminal defendant's actual guilt (as opposed to his legal guilt) is not the determinative issue in the underlying criminal proceeding, he should not be required to prove his lack of actual guilt in order to succeed in a malpractice action.

The court's requirement that plaintiffs in a malpractice action prove by a preponderance of the evidence that they did not actually commit the crime with which they were charged, imposes upon such plaintiffs an unnecessary burden, which has no basis in tort law. In order to establish proximate cause in a tort action, a plaintiff typically must prove that there was a causal connection between the alleged negligence of the defendant and the injury suffered by the plaintiff. See *Falvey* v. *Hamelburg*, 347 Mass. 430, 435 (1964); Restatement (Second) of Torts §§ 430-433 (1965). The plaintiff in the instant case alleges that the jury failed to acquit him because of his attorney's negligence. The plaintiff's burden should simply be to show that, if it had not been for his at-

torney's negligence, the result of the criminal trial would have been different. See *Mylar* v. *Wilkinson*, 435 So. 2d 1237, 1239 (Ala. 1983); *Cooper* v. *Simon*, 719 S.W.2d 463, 464 (Mo. Ct. App. 1986), cert. denied, 482 U.S. 918 (1987); *Krahn* v. *Kinney*, 43 Ohio St. 3d 103, 105 (1989).

The court argues that the plaintiff should be required to prove his innocence because "[a] person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence," *ante* at 707. The only finding, however, regarding the criminal defendant's legal guilt was vacated by the Appeals Court. See *Commonwealth* v. *Glenn*, 23 Mass. App. Ct. 440 (1987). The fact that the Appeals Court noted in its opinion that "[a] properly instructed jury *could* have found the [criminal] defendant guilty" (emphasis supplied), *ante* at 705, citing *Commonwealth* v. *Glenn*, *supra* at 444, is not enough to justify imposing on the plaintiff the burdensome requirement of proving his innocence.

I agree with the court that the public has a strong interest in encouraging the representation of criminal defendants. I do not believe that this public interest will be threatened significantly by imposing on criminal defendants no greater requirement of proof than is imposed on other plaintiffs who sue in tort. Plaintiffs in a malpractice action will still have to show that the defendant attorney did not exercise a reasonable degree of care and skill in the performance of his duties. See *Fishman* v. *Brooks*, *supra* at 646; *Caverly* v. *McOwen*, 123 Mass. 574 (1878). If a plaintiff in a malpractice action can establish that the defendant attorney failed to meet the standard of care, he will then have to prove by a preponderance of the evidence that the result of the criminal trial probably would have been different if the attorney had not been negligent. The plaintiff will have to show that the attorney's negligence deprived him of the opportunity to raise a defense or take action which would have altered the outcome of the trial. Cf. *Commonwealth* v. *Saferian*, 366 Mass. 89, 98 (1974). In cases where the evidence against the criminal defendant is strong, for example, a negligent failure to chal-

lenge the admission of evidence, or to cross-examine a partic-
ular witness, may not be enough to convince a trier of fact
that the criminal defendant would have been acquitted if the
attorney had not been negligent. There is no reason to believe
that this application of the ordinary proximate cause require-
ment will deter attorneys from representing criminal defend-
ants any more than physicians are deterred from treating pa-
tients because of the threat of malpractice suits. In any
event, the public not only has an interest in encouraging the
representation of criminal defendants, but it also has an in-
terest in making sure that the representation is, at the very
least, not negligent.